# EXHIBIT 1

Sara D. Beller (California Bar No. 316210)
sara.beller@dolmanlaw.com
Matthew A. Dolman (*pro hac vice forthcoming*)
matt@dolmanlaw.com
R. Stanley Gipe (*pro hac vice forthcoming*)
stan.gipe@dolmanlaw.com
**DOLMAN LAW GROUP**
800 N. Belcher Road
Clearwater, FL 33765
Telephone: (727) 451-6900
Facsimile: (724) 451-6907

Alexandra M. Walsh (*pro hac vice forthcoming*)
awalsh@anapolweiss.com
**ANAPOL WEISS**
14 Ridge Square NW, Suite 342
Washington, DC 20016
Telephone: 202.780.3014
Facsimile: 202.780.3678

*Additional Counsel in Signature Block*
*Counsel for Plaintiff*

Electronically FILED by Superior Court of California, County of Los Angeles 9/05/2025 4:25 PM David W. Slayton, Executive Officer/Clerk of Court, By A. Miranda, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| JANE DOE L.B., an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation; and DOES 1-25, inclusive,<br><br>Defendants. | Case No: 25LBCV02492<br><br>**COMPLAINT**<br><br>1) NEGLIGENCE;<br><br>2) NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION;<br><br>3) NEGLIGENT SUPERVISION OF A MINOR;<br><br>4) BREACH OF MANDATORY DUTY. |

Plaintiff, Jane Doe L.B. ("Plaintiff"), by and through counsel, respectfully brings this Complaint against Defendants The Church of Jesus Christ of Latter-Day Saints ("the Church") and DOES 1-25 (hereinafter, collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1. This case involves egregious sexual, physical, and emotional abuse of a child.

2. In or around 1993-1994, minor Plaintiff was sexually assaulted, on numerous occasions, while under Defendants' care during Defendants' organized Church activities. The abuse was perpetrated by an adult member and elder of the Church ("the Perpetrator") and involved the groping and fondling of Plaintiff's breasts and vagina over and under Plaintiff's clothes, forced kissing, as well as the oral copulation and digital penetration of Plaintiff's vagina by the Perpetrator.

3. All allegations in this Complaint that do not relate to Plaintiff's personal experiences are based on information and belief and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Under Code of Civil Procedure section 340.1, Plaintiff brings this Complaint against Defendants to recover damages for the devastating harm Plaintiff suffered as a result of the childhood sexual abuse she endured while under Defendants' care, control, and supervision.

4. The acts of sexual abuse and assault against Plaintiff described herein included conduct which constitutes childhood sexual assault as defined in Code of Civil Procedure section 340.1, subdivision (d).

**PARTIES**

5. **Plaintiff L.B.** ("Plaintiff") is an adult female under the age of forty at the time of this filing and a resident of Maricopa County, Arizona. At all relevant times herein, Plaintiff was a minor and resident of Los Angeles County, California. The incidents and events giving rise to this action occurred in Long Beach, California.

6. Given the sensitive nature of her claims, Plaintiff is using pseudonymous initials in this litigation to protect her privacy as a victim of childhood sexual abuse, assault, harassment, and molestation. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) If the Court requires, Plaintiff will formally move for permission to proceed under this pseudonym.

7. **Defendant The Church of Jesus Christ of Latter-Day Saints** ("the Church") is a corporation organized and incorporated in the State of Utah. The Church functionally operates meeting houses, congregations, wards, and parishes within the State of California, including Los Angeles

2
COMPLAINT AND DEMAND FOR JURY TRIAL

County. The Church does business with and conducts continuous and systemic activities in California and is registered to do business in California.

8. Within the Church, congregations are referred to as "wards" and are overseen by a Bishop, who serves at the pleasure of and subject to the direct and absolute control of the Church. In this way, a Bishop is analogous to a pastor in Catholicism. A group of wards in a geographical area create a "stake," which is comparable to a Catholic diocese. Each stake is overseen by a "stake president," which is akin to a bishop in Catholicism.

9. At all relevant times, Plaintiff was a member of the Long Beach 7th Ward, located at 6979 Orange Avenue, Long Beach, California. Upon information and belief, the Church owns and operates the Long Beach 7th Ward.

10. Defendants each assumed responsibility for the wellbeing of their members, prospective members, and invitees, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School, and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members, prospective members, and invitees. As a result, they each had a special relationship with members, prospective members, and invitees of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members, prospective members, and invitees of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, Defendants assumed special responsibilities towards their members, prospective members, and invitees including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members, prospective members, and invitees from the harm they might inflict.

11. **Defendants DOES 1-25** were, at all times relevant, Church officials, employees, and/or agents under the Church's control, management, and supervision.

12. Defendants DOES 1-25 are sued herein under said fictitious names. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-25 and therefore sues said DOE Defendants by such fictitious names at this time. Each of the Defendants designated herein as a DOE

Defendant is negligently, intentionally, or otherwise legally responsible in some manner for the events and happenings described herein that caused Plaintiff's injuries and damages. When ascertained, Plaintiff will seek leave of court to amend this Complaint to assert the true names, identities, and capacities of such DOE Defendants.

13. Plaintiff is informed and believes, and on that basis alleges, that at all times material herein, each and every Defendant was a principal, agent, servant, and/or other employee of each and every other Defendant, and/or under their complete control and active supervision. In doing the acts and/or omissions alleged herein, each of said Defendants acted within the course and scope of his, her, or its authority—whether actual or apparent—as a principal, agent, servant, and/or employee of each and every other Defendant, and gave or received full consent, permission, and ratification to the acts and/or omissions alleged herein. Accordingly, each of them is jointly and severally liable to Plaintiff.

**JURISDICTION AND VENUE**

14. This Court has personal jurisdiction over Defendants because each Defendant systematically and continually has conducted and continues to conduct business in Los Angeles County, and the State of California.

15. Alternatively, jurisdiction also lies in California as Plaintiff was subject to multiple acts of sexual assault and/or injury in the State of California by the Perpetrator who was acting in his role as an employee, agent, servant, member, and/or volunteer of Defendants at the time he sexually assaulted the Plaintiff—then a minor. (See e.g., *Doe v. Damron*, 70 Cal.App.5th 684 (Ct. App. 2021) (visitors to a state should reasonably expect that, if they assault someone in their travels, they may have to answer for their conduct in the state's courts; jurisdiction in California found even when alleged tort occurred during a single, brief visit by non-resident to the forum state).)

16. In addition to the wrongful acts perpetrated on Plaintiff, and prior to the same, Defendants have been subjected to multiple prior similar lawsuits in California involving sexual abuse and/or sexual assault claims involving minor children.

17. Defendants' minimum contacts with the State of California are such that traditional notions of fair play and substantial justice have been satisfied, and they are also such that at all times Defendants should have reasonably anticipated that Defendants' wrongful and/or tortuous conduct

would cause them to be hailed into California Court.

18. Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Los Angeles, California.

## STATUTE OF LIMITATIONS

19. Under Code of Civil Procedure section 340.1, "a claim for damages…in which the childhood sexual assault occurred on or before December 31, 2023, may only be commenced pursuant to the applicable statute of limitations set forth in existing law as it read on December 31, 2023." (Code Civ. Proc. § 340.1, subd. (p).) Since the childhood sexual assault perpetrated against Plaintiff occurred before 2023, former Code of Civil Procedure section 340.1, as amended by Statutes 2022, chapter 444, section 1 (applicable through Dec. 31, 2023) governs the timeliness of Plaintiff's claims.

20. Under former Code of Civil Procedure section 340.1, a civil action for the recovery of damages suffered as a result of childhood sexual assault is to be commenced before the victims' 40th birthday. (Former Code Civ. Proc. § 340.1, subd. (a).) This Complaint is timely filed because Plaintiff was a minor when she suffered the acts of sexual assault described herein and, as of the time of this filing, Plaintiff is currently under the age of forty.

## FACTUAL ALLEGATIONS

### *History of Abuse in the Church*

21. It is now well-known that childhood sexual abuse is a serious issue that plagues the Church. Over the years, hundreds of survivors have come forward exposing the abuse they experienced within the Church's walls or at the hands of trusted Church leaders.[1] This lengthy history of abuse dates

---

[1] *See, e.g.,* Jeremy Harris, *Mormon Church Child Leader Admits to Sex Abuse at Sleepovers he Hosted*, ABC 7 (June 14, 2022) https://katv.com/news/nation-world/mormon-church-child-leader-admits-to-sex-abuse-at-sleepovers-he-hosted-sexual-assault-child-abuse-psychosexual (a man who taught primary in a congregation of the LDS Church in West Jordan, Utah admitted to sexually abusing a girl from his ward); *$2.3 Billion Awarded in Sexual Abuse Case Involving Morning Church—but they Settled out Months Ago for $1 Million*, ASSOCIATED PRESS (April 28, 2023, https://fortune.com/2023/04/28/2-3-billion-sexual-abuse-case-jury-verdict-mormon-church-latter-day-saints/) (a woman who was molested as a child by her step-father on the property of her local Lake Elsinore LDS Church achieved a verdict in her favor); Christopher Smart, *Children's Charity Co-Founder Sentence in Sex Abuse Case*, THE SALT LAKE TRIBUNE (Nov. 3, 2011), https://archive.sltrib.com/article.php?id=17798173&itype=storyID (former LDS bishop was convicted of sexually abusing his adopted children for years); Gene Kennedy, *Former LDS Bishop Pleads Guilty to Sex Abuse*, KSL.COM, (Sept. 24, 2008), https://www.ksl.com/article/4355348 (former LDS bishop in Harrisville, Utah pled guilty to abusing several children in is church ward).

back to well before Plaintiff's abuse at the Long Beach 7th Ward.[2]

22. Not only have members of the Church repeatedly subjected children within its wards to sexual abuse, but the Church as an institution has also gone to extreme lengths to suppress reports of abuse. Most notably, in 1995 the Church established a 24/7 confidential "help line" that's sole purpose was to contain allegations of sexual abuse within the Church.[3] Church policy dictates that officials, including stake presidents and bishops, "promptly call the help line about every situation in which a person may have been abused – or is at risk of being abused."[4] Church policy further instructs officials across all stakes and wards to seek guidance from the help line on handling situations of abuse or suspected abuse.[5] The help line is staffed by social workers who destroy records of all calls at the end of each day.[6] When the social workers receive a call about abuse that presents a risk to the Church, such as abuse perpetrated by a Church leader, they refer the call to attorneys for the Church.[7] The attorneys then instruct callers not to report the abuse to law enforcement or child welfare officials.[8] In fact, the attorneys strictly advised the callers to do *nothing* about the alleged sexual abuse.[9] Although the Church leaders were obligated to report allegations of abuse, LDS attorneys would inform the leaders that they were exempted from reporting due to the protections of clergy/penitent privilege or attorney/client privilege.[10]

23. In one particularly egregious example, a member of the Church confessed that he had

---

[2] A Mormon whistleblowing organization, Mormon Leaks, created a report compiling the publicly made allegations of child sex abuse in the Mormon church. The allegations of abuse date back to 1959. Compiled by Deborah J. Diener, *Instances of Child Sexual Abuse Allegedly Perpetrated by Members of The Church of Jesus Christ of Latter-Day Saints*, MORMON LEAKS, https://mormonleaks.io/wiki/documents/6/60/INSTANCES_OF_CHILD_SEXUAL_ABUSE_ALLEGEDLY_PERPETRATED_BY_MEMBERS_OF_THE_CHURCH_OF_JESUS_CHRIST_OF_LATTER-DAY_SAINTS-2017-06.pdf, (last visited Aug. 27, 2025).
[3] Michael Rezendez, *Seven Years of Sex Abuse: How Mormon Officials Let it Happen*, THE ASSOCIATED PRESS (Aug. 4, 2022) https://apnews.com/article/mormon-church-sexual-abuse-investigation-e0e39cf9aa4fbe0d8c1442033b894660.
[4] *Abuse Help Line*, The Church of Jesus Christ of Latter-Day Saints, https://www.churchofjesuschrist.org/callings/church-safety-and-health/abuse-help-line (last visited Aug. 27, 2025).
[5] Rezendez, *supra* note 3.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Peggy Fletcher Stack & Tamarra Kemsley, *Does the LDS Church's Sex Abuse Help Line Protect the Faith or the Victims? Debate Continues*, THE SALT LAKE TRIBUNE (Aug. 15, 2022), https://www.sltrib.com/religion/2022/08/15/whom-does-sex-abuse-help-line/.

been raping his five-year-old daughter during a counseling session with his Bishop.[11] After he learned of the abuse, the Bishop followed Church policies and called the help line.[12] When he called, the LDS attorneys told the Bishop that he "absolutely can do nothing" about the sexual abuse and that he was legally bound to keep the abuse a secret because he learned of the abuse during a counseling session, which the Church considers a "spiritual confession."[13] Because the Church failed to intervene or report the abuse, the Church member continued to rape his daughter for another seven years and even went on to abuse a second daughter.[14] The abuse continued until Homeland Security arrested the Church member—without any assistance from the Church.[15]

24. The true nature of the "help line" was revealed when the Associated Press obtained nearly 12,000 pages of sealed records from a separate lawsuit against the LDS Church, for allegations of child sex abuse arising out of a ward in West Virgina.[16] The records revealed that the help line was part of an overarching system within the LDS Church to divert allegations of abuse away from law enforcement and toward Church attorneys, who could handle the issues internally.[17] In sworn statements, LDS Church officials confirmed that the social workers who staffed the help line do in fact *destroy* records of all calls at the close of every day.[18]

25. Additionally, there have been several reports of LDS Church leaders who have actively discouraged Church members from reporting allegations of abuse and utilized manipulation tactics, such as shaming and gaslighting, to prevent them from doing so. One San Diego woman spoke up, demanding answers as to why the leaders of her LDS Church turned a blind eye to the sexual abuse she endured as a child.[19] She said that in 1988 when she and her mother informed the Church leaders

---

[11] Rezendez, *supra* note 3.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] Dorian Hargrove, Carlo Cecchetto & Jon Stinebaugh, *Lawsuit: Mormon Church Leaders in San Diego Turned a Blind Eye to a Report of an Eldor Molesting his Daughter*, CBS 8 (Nov. 14, 2022), https://www.cbs8.com/article/news/investigations/woman-says-mormon-church-leaders-in-san-diego-failed-to-protect-her-from-sexual-abuse/509-fe7118ee-f39b-4136-a32f-d74200fe096a.

that her father, an LDS elder, had molested her, the Church leaders discouraged her from reporting the abuse to the police.[20] In turning a blind eye to the abuse, the LDS Church allowed the abuse to continue for 13 years.[21] Another sexual abuse survivor came forward and shared that the LDS Church frequently resorted to "intimidation and shaming tactics" to prevent her from speaking up about the abuse she repeatedly endured.[22]

26. Further, across the United States, civil and criminal charges have repeatedly been brought against LDS Church leaders for failing to report known allegations of child sexual abuse within their wards.[23]

27. These instances of abuse and the lengths that Church leaders would go to cover-up these allegations establish that: (1) Defendants were aware of the risks of childhood sexual abuse in its wards, and (2) the LDS Church lacked policies and procedures to ensure safe and effective reporting of childhood sexual abuse.

### *Duty*

28. A special relationship exists between a church, its religious leaders, and its parishioners. Parishioners are encouraged to trust religious leaders' knowledge, prudence, experience, and character, and are taught to view these individuals as an extension of God, or other religious beings. Religious leaders are held in extremely high regard because of the very role they occupy within the larger church organization. This authority and reverence are bestowed upon them by the religious organization.

29. At all times relevant herein, as a member of the Church, Plaintiff placed her trust and confidence in the Church and its leaders, at said leaders' request. By holding out its leaders and hierarchal members as its agents, including the Perpetrator, whom the Church placed in positions of authority and responsibility over members of the church, including Plaintiff, Defendants entered a

---

[20] *Id.*
[21] *Id.*
[22] *$2.3 Billion Awarded…*, *supra* note 1.
[23] *See, e.g.,* Aubree B. Jennings, George Stockburger & Seth Kaplan, *LDS Church Leader Faces Felony After Pennsylvania Police Say He did not Report Child Rape Allegations*, ABC 4 (Feb. 1, 2024), https://www.abc4.com/news/national/lds-church-leader-faces-felony-after-pennsylvania-police-say-he-did-not-report-child-rape-allegations/ (Pennsylvania LDS Church state president failed to report the sexual assault allegations of another LDS church leader in his stake).

special and fiduciary relationship with Plaintiff. As a result of this special relationship, Defendants owed Plaintiff a heightened duty to protect her from foreseeable harm. As such, a special relationship existed between the Church, including its religious leaders, and Plaintiff, wherein the Church and its leaders owed Plaintiff a heightened duty of care.

30. By establishing and operating the Long Beach 7th Ward, holding their facilities and services out as a safe environment for parishioners, and encouraging and accepting Plaintiff's participation in Church activities, Defendants voluntarily assumed the care, supervision, and responsibility of Plaintiff. As such, Defendants, and each of them, owed a duty to protect Plaintiff from foreseeable harm.

31. Accordingly, Defendants owed heightened duties of care to protect Plaintiff's safety, care, and wellbeing while she was under the care, supervision, or in the presence of the Church's employees and/or agents. These heightened duties encompassed the protection and supervision of Plaintiff, the enforcement of rules and regulations necessary to Plaintiff's protection, and the provision, generally, of a safe environment for Plaintiff while she was under Defendants' care, custody, and/or supervision.

32. At all times relevant herein, a special relationship of employer-employee and/or principal-agent exists between a religious organization and its leaders, including the Perpetrator and DOES 1-25. This special relationship exists because the religious organization has the ability to exercise control over the leaders and members it selects to work within its wards. Thus, at all relevant times herein, a special relationship employer-employee and/or principal-agent existed between the Church, the Perpetrator, and DOES 1-25, in which the Church owed a duty to control the acts and conduct of the Perpetrator to prevent foreseeable harm to Plaintiff. Based on this special relationship, the Church had a duty to:

    a. Use reasonable care in the retention, supervision, and hiring of the Perpetrator and DOES 1-25;

    b. Establish and implement safety measures, policies, and procedures in the exercise of reasonable care for the prevention of sexual abuse, and protection of the safety of children and safety of children and parishioners in their care;

      c. Exercise and implement safety measures, policies, and procedures in the exercise of reasonable care for the prevention of sexual abuse, and protection of the safety of children and safety of children and parishioners in their care; and

      d. Use reasonable care in the supervision of staff, agents, and/or employees in their dealings with children and parishioners in their care to ensure strict adherence to and implementation of the aforementioned safety measures, policies, and procedures.

### *Specific Allegations of Sexual Abuse*

33. Growing up, Plaintiff was a devout member of the Long Beach 7th Ward in Long Beach, California. In or around 1993-1994, when Plaintiff was approximately eight (8) to nine (9) years old, she endured repeated acts of sexual assault by the Perpetrator.

34. At all times relevant herein, the Perpetrator was a member and elder of the Church at the Long Beach 7th Ward. By virtue of his position as an elder and religious figure, the Perpetrator had unfettered access to Plaintiff when she attended the Long Beach 7th Ward.

35. As a then-devout member of the Church, Plaintiff trusted the Perpetrator, which the Perpetrator intentionally cultivated, knowing it would make Plaintiff easier to manipulate and exploit.

36. Once the Perpetrator successfully procured Plaintiff's trust, he started to manipulate and sexually prey on Plaintiff. The first instance of sexual abuse occurred when Plaintiff was approximately eight (8) years old during a sacrament meeting at the Long Beach 7th Ward. Following the sacrament, the Perpetrator told Plaintiff he wanted to speak with her and directed her to a storage room near the basement. Inside the storage room, the Perpetrator started rubbing Plaintiff's body and kissing her face and forehead. The Perpetrator then fondled Plaintiff's breasts and vagina under her dress. This occurred in the storage room at the Long Beach 7th Ward multiple times when Plaintiff was eight (8) to nine (9) years old. To control Plaintiff and perpetrate the abuse, the Perpetrator expressly warned Plaintiff not to tell anyone about the abuse and threatened that, even if she did, no one would believe her.

37. Emboldened by the absence of accountability and the silence he had coerced, the Perpetrator escalated his abusive conduct. On one occasion, the Perpetrator kissed Plaintiff's breasts and orally copulated her vagina. On another, the Perpetrator digitally penetrated Plaintiff's vagina.

38. The Perpetrator perpetrated each act of sexual abuse in the same manner. He isolated

Plaintiff at the Long Beach 7th Ward—oftentimes by grabbing her hand during the sacrament meeting and directing her to the storage room where he would exploit and sexually assault Plaintiff. As a young girl and devout member of the Church, Plaintiff never disobeyed the religious elder. Despite the fact that the Perpetrator repeatedly escorted Plaintiff out of the chapel alone—in the middle of sacrament meetings—nobody intervened nor questioned why an adult man was taking a young girl away from the service unsupervised.

39. In all, the Perpetrator sexually abused Plaintiff on more than five (5) occasions at the Long Beach 7th Ward when Plaintiff was between eight (8) and nine (9) years old. The abuse stopped when Plaintiff moved away from the area and stopped attending the Long Beach 7th Ward.

*Notice – Foreseeability*

40. At all relevant times herein, the Perpetrator was Defendants' employee, official, and/or agent under Defendants' control, management, and supervision. In this way, Defendants were responsible for the supervision, management, and retention of the Perpetrator.

41. At all relevant times herein, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff was particularly vulnerable and susceptible to sexual abuse and harassment at the hands of the Perpetrator. Specifically, because of the Perpetrator's role as an elder within the Church, authority, age, and unfettered access to minors at the Long Beach 7th Ward, it was reasonably foreseeable that the Perpetrator would commit acts of sexual abuse or harassment on minors under the care and supervision of the Church.

42. Before the sexual abuse against Plaintiff, Defendants knew or should have known, or were otherwise put on notice of conduct, including the allegations herein, that would put a reasonable person on notice of the Perpetrator's propensity to sexually abuse, harass, and molest minors.

43. Further, Defendants knew or should have known that there was a systemic failure of supervision and management of its officials and agents throughout LDS wards and stakes due to the lengthy history of sexual abuse within the LDS Church. Based on the pervasiveness of sexual abuse within the religious organization, especially between LDS Church leaders/elders and parishioners, Defendants knew or should have known that its leaders and members were reasonably likely to engage in such abusive behavior against parishioners.

44. At all relevant times herein, Defendants knew or should have known that they did not have reasonable safeguards in place to adequately protect its minor parishioners, including Plaintiff, from sexual abuse and harassment. Absent adequate safeguards and reporting policies and procedures, it was reasonably foreseeable to Defendants that such acts of sexual abuse and harassment would occur.

45. Based on the foregoing, at all relevant times, Defendants knew or should have known that children in their care were subject to a substantial risk of maltreatment and abuse, including acts of sexual assault and abuse.

### *Breach*

46. Upon information and belief, and at all relevant times herein, Defendants failed in all aspects of their obligations, including in the hiring, training, retention and supervision of the Perpetrator, as detailed herein. Included in these failures, Defendants failed to:

   a. Reasonably supervise and monitor minor children attending services and meetings at the Long Beach 7th Ward;

   b. Protect Plaintiff from reasonably foreseeable harm;

   c. Provide Plaintiff with a safe church environment where she would not be subjected to repeated acts of sexual assault;

   d. Establish and implement adequate programs, policies, and procedures in the exercise of reasonable care for the protection of minor children in the Church's care and the prevention of sexual assault;

   e. Establish and implement adequate programs, policies, and procedures to ensure that reports of sexual harassment and assault are investigated and addressed, such that corrective actions are taken and an individual is not repeatedly subject to the same form of harassment and assault;

   f. Adequately train its clergy officials and employees in said programs, policies, and procedures; and

   g. Supervise and minor the Church's clergy officials and employees to ensure adherence to such programs, policies, and procedures, as well as the overall safety of its wards.

47. By failing to adequately monitor the youth members at the Long Beach 7th Ward, Defendants allowed Plaintiff to be subject to repeated sexual assault by a Church elder. Had the Church ensured that its clergy officials were following safe policies and procedures, the Perpetrator would not have been able to sexually assault Plaintiff.

48. At all relevant times herein, the LDS leaders' actions and inactions alleged herein occurred within the scope of their employment and/or agency with the Church and while acting within their roles as selected leaders of the Church.

49. Included in Defendnats' failures and breaches of their duties, as detailed with greater specificity herein, the Perpetrator was:

   a. Allowed to have significant authority over vulnerable children under the Church's care and supervision, despite not having been adequately vetted to determine the degree of risk he posed to such children;

   b. Allowed to have unfettered access to children at Long Beach 7th Ward, including Plaintiff;

   c. Allowed to be alone with children at Long Beach 7th Ward without supervision; and

   d. Allowed to groom and then physically assault minors, including specifically Plaintiff, in public for extended periods of time without anyone intervening or raising a red flag about this blatantly inappropriate and criminal conduct.

### *Plaintiff's Economic and Non-Economic Damages*

50. As a direct and proximate result of Defendants' tortious acts, omissions, and breaches of their respective duties, Plaintiff has suffered and continues to suffer substantial economic and non-economic damages.

51. Plaintiff experiences a range of mental health issues stemming from the sexual assault she endured at Long Beach 7th Ward, such as severe emotional distress and anguish, trust issues, social anxiety, major depressive disorder, feelings of shame and guilt, and other injuries, damages (both economic and non-economic), and permanent disability. Plaintiff's overall mental and emotional distress has caused her to experience tremendous instability, including difficulty holding a steady job. Due to the extent and severity of her mental and emotional distress, Plaintiff has been under the care

of a therapist for several years.

52. The injuries and damages suffered by Plaintiff are specific in kind to Plaintiff, substantial, special, peculiar, and above and beyond those injuries and damages suffered by the public.

## FIRST CAUSE OF ACTION

*Negligence*

**(Against All Defendants and DOES 1-25)**

53. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

54. Defendants owed special duties to their parishioners, including Plaintiff, who placed their trust and confidence in their religious organization and its leaders. Defendants also owed a duty to protect the children they voluntarily undertook to care for and supervise. The duty to protect Plaintiff arose from the special, trusting, confidential, fiduciary relationship between Plaintiff and Defendants.

55. Due to the special relationship that existed, Defendants owed a duty to adequately supervise and monitor Plaintiff during sacrament meetings and Church activities, provide Plaintiff with a safe environment to attend sacrament meetings, establish policies and programs that benefit its parishioners, require reporting of allegations of sexual harassment and assault, require corrective action when such reports are made, train employees, including stake presidents and acting bishops, on how to implement these policies and program, and adequately supervise employees and agents to ensure their compliance with these programs and policies.

56. Defendants breached their duties of care to Plaintiff by way of multiple acts and/or omissions, including but not limited to: failing to properly hire, train, retain, and supervise the Perpetrator; failing to supervise and monitor Plaintiff so as to protect her from foreseeable sexual abuse by the Perpetrator; failing to implement reasonable safeguards to prevent abuse from occurring at the Long Beach 7th Ward; and failing to take corrective action to prevent and report foreseeable sexual abuse at the Long Beach 7th Ward.

57. As a result of Defendants' negligence, Plaintiff was sexually abused by the Perpetrator.

58. Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, she would not have been subjected to repeated acts of sexual

assault and abuse.

59. As a direct and proximate result of Defendants and DOES 1-25's conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

### *Negligent Supervision, Hiring, and Retention*

### (Against All Defendants and DOES 1-25)

60. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

61. Defendants had the ability to, and did, hire, supervise, control, and/or retain employees and agents, including the Perpetrator. Upon information and belief, at all relevant times, the DOE Defendants who engaged in the hiring, supervising, and retaining of Defendant Church's employees, including but not limited to the Perpetrator, knowingly acted within the course and scope of their employment and/or agency with Defendants.

62. By virtue of Defendants' special relationship with Plaintiff, Defendants and DOES 1-25 owed Plaintiff a duty to provide reasonable supervision of employees and/or agents at the Long Beach 7th Ward, to use reasonable care in investigating said employees and/or agents and to provide adequate warning to Plaintiff and other children at the Long Beach 7th Ward regarding any employee and/or agent's unfitness or incompetence. Defendants and DOES 1-25 had a duty to protect, supervise, and monitor Plaintiff from being preyed upon by sexual predators, and to supervise the Perpetrator such that he would not be secluded with vulnerable and defenseless children, including Plaintiff.

63. Defendants and DOES 1-25, either themselves, or by and through their employees and/or agents, knew or should have known that the Perpetrator was unfit or incompetent to perform the work for which he was hired.

64. Defendants and DOES 1-25, either themselves, or by and through their employees

and/or agents, knew or should have known that the Perpetrator's unfitness or incompetence created a particular risk of harm to children at the Long Beach 7th Ward, including Plaintiff.

65. Despite such knowledge, Defendants and DOES 1-25 failed to exercise reasonable care in the hiring, supervision, training, and/or retention of the Perpetrator.

66. At all times relevant, Defendants did not have or implement a system or procedure to adequately investigate, supervise, and monitor employees at the Long Beach 7th Ward, including the Perpetrator, such that Defendants and DOES 1-25 could prevent grooming, sexual harassment, molestation, and/or abuse of children.

67. By failing to exercise reasonable care in the hiring, supervision, training, and/or retention of the Perpetrator, Defendants and DOES 1-25 breached their heightened duties of care owed to Plaintiff and Plaintiff was sexually abused and assaulted.

68. As a direct and proximate result of Defendants and DOES 1-25's conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION

*Negligent Supervision of a Minor*

**(Against All Defendants and DOES 1-25)**

69. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

70. By virtue of Plaintiff's special relationship with Defendants, Defendants and DOES 1-25 owed Plaintiff a duty to reasonably and adequately supervise him while she was under Defendants' supervision and care.

71. Defendants and DOES 1-25 breached their duty to adequately supervise Plaintiff by way of multiple acts and omissions, including but not limited to: failing to monitor and supervise Plaintiff; failing to adopt or implement reasonable safeguards to prevent the Perpetrator, an adult male,

from being alone and unsupervised with young girls at the Long Beach 7th Ward.

72. Defendants and DOES 1-25 failed to take reasonable steps or implement reasonable safeguards to adequately monitor and supervise Plaintiff while he was under Defendants' care and supervision, and as such, were a legal cause of the sexual assault and abuse that resulted in injury to Plaintiff.

73. Defendants and DOES 1-25 knew or should have known how vulnerable children, including Plaintiff, were to sexual grooming, assault, and abuse perpetrated by trusted religious figures, including the Perpetrator. Defendants and DOES 1-25 knew, or had reason to know, or were otherwise on notice, of the Perpetrator's misconduct that created a risk of sexual grooming, assault, and abuse against Plaintiff.

74. It was reasonably foreseeable to Defendants and DOES 1-25 that failing to adequately supervise and monitor children under Defendants' supervision and care may result in the sexual abuse and assault of the same children, including Plaintiff.

75. As a direct and proximate result of Defendants and DOES 1-25's conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FOURTH CAUSE OF ACTION

*Breach of Mandatory Duty: failure to Report Suspected Child Abuse*

**(Against All Defendants and DOES 1-25)**

76. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

77. Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or

child protective services within a very short period.

78. Defendants, acting through their employees, had, or should have had a reasonable suspicion that the Perpetrator was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

79. Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, *et seq*. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

80. By failing to report suspected child abuse, Defendants allowed the Perpetrator to continue, unhindered, in his abuse of minor children, including Plaintiff.

81. As a direct and proximate result of Defendants and DOES 1-25's conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and DOES 1-25, and each of them, as follows:

1. For special damages, according to proof;
2. For past and future general damages, including physical pain, mental anguish, disfigurement and physical impairment, according to proof;
3. For past and future lost earnings and/or earning capacity, according to proof;
4. For costs of suit incurred herein; and
5. For such other relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

DATED: September 3, 2025

Respectfully submitted,

By: *Sara Beller*
Sara D. Beller, Esq. (SBN: 316210)
sara.beller@dolmanlaw.com
Matthew A. Dolman, Esq.*
matt@dolmanlaw.com
R. Stanley Gipe, B.C.S.*
Stan.gipe@dolmanlaw.com
**DOLMAN LAW GROUP**
800 N. Belcher Road
Clearwater, FL 33765
Telephone: 727.451.6900
Facsimile: 727.451-6907

Alexandra M. Walsh, Esq.*
**ANAPOL WEISS**
14 Ridge Square NW, Suite 342
Washington, DC 20016
Telephone: 202.780.3014
Facsimile: 202.780.3678
Email: awalsh@anapolweiss.com

Thomas Anapol, Esq.*
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (202) 780-3014
Email: tanapol@anapolweiss.com

*And*

Paige N. Boldt, Esq. (SBN: 308772)
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (202) 780-3014
Email: pboldt@anapolweiss.com

*Attorneys for Plaintiff*

**Pro Hac Vice* motions forthcoming